STATE OF MISSOURI *ex rel.* THOMAS A. PARKER, State Superintendent of Public Schools, Relator, *v.* ALONZO THOMPSON, State Auditor, Respondent.

1. *Statutes—Construction—Evidence.*—Every act of the Legislature must be held to be prospective in its operation, unless a different effect is clearly to be gathered from its terms.
2. *Revenue—School Fund—Appropriation.*—By the statute, G. S. 1865, p. 269, § 59, the twenty-five per cent. of the general revenue of the State, to be appropriated to the University and Public Schools, is to be taken from the revenue collected in the year 1867. The act of March 13, 1867, repealing the proviso of § 59, p. 269, G. S., did not act retrospectively to appropriate the revenue collected in 1866.

*Petition for Mandamus.*

Relator, *pro se.*

Respondent, *pro se.*

FAGG, Judge, delivered the opinion of the court.

This is an application for a mandamus upon the State Auditor, requiring him to certify to the relator, as State Superintendent of Public Schools, the amount of revenue now in the State treasury applicable to the support of said Schools, and subject to be apportioned among the several counties in the State for that purpose in the present year.

The 59th section of ch. 46, p. 269, after enumerating specifically several sources from which a fund for the support and maintenance of Public Schools is to be created, contains the following provisions : " the income of which, together with twenty-five per cent. of the State revenue, shall be applied annually to the support of the Public Schools and University provided for in this act, to be divided and apportioned as hereinafter provided ; provided, that the twenty-five per cent. of the State revenue shall not be applied to the support of the Public Schools or University until the year 1867."

It is claimed that this provision amounts to a direct appropriation of money from the State treasury, to be apportioned by the Superintendent, and applied to the support and maintenance of the Public Schools for the present year. If so, it would follow that one-fourth of all the money in the State treasury on the 1st of March, 1867, not directly appropriated by acts of the Legislature passed previous to the enactment of the School law, should be set apart for that purpose.

We take it that the intention of the Legislature is to be gathered from the terms of the act. Nothing appears upon its face which would authorize a resort to any other mode of interpretation. The addition of this proviso to the section was certainly intended to subserve some specific purpose. Let us see what that was : The act in question was passed in the session of 1865 and 1866, and incorporated among the general statutes of the State. No time was specified by the act itself as to when it should take effect. By the provisions of a general statute upon that subject, however, the 1st day of August, 1866, was fixed when all laws should go into operation, unless a different time had been expressly designated.

Section 80 of the School law directs, " that the State Superintendent of Public Schools shall, annually, in the month of March, apportion the Public School fund, applied for the benefit of the Public Schools, among the different coun-

ties upon the enumeration and returns made to his office,"
&c.

The enumeration and returns here spoken of are required
to be made by the clerks of the several County Courts to
the State Superintendent, on or before the 1st day of Novem-
ber in each year. Now, if the 59th section of the act, at the
time it went into operation, had stood alone without the pro-
viso in question, there could have been no controversy as to
what was really intended. Twenty-five per cent. of the rev-
enue collected and paid into the treasury on or before the
month of March, 1867, would have been the amount to be
apportioned by the Superintendent, and which, under that
apportionment, should be applied to the support of the
Schools for that year.

Nothing could have been plainer and less liable to miscon-
struction than it would have been in that shape. But the
Legislature thought proper to attach this proviso, the effect
of which—if any force and effect whatever is to be given to
it—is to change the plain and obvious meaning of the sec-
tion as it would stand without it. In the very nature of
things, then, it must have been intended that the first applica-
tion of this portion of the School fund was to be of the
twenty-five per cent. of the State revenue collected in the
year 1867.

On the 13th day of March, 1867, the Legislature then in
session passed an act repealing this proviso, and leaving the
remainder of section 59 to stand precisely as it did when
first enacted. We are asked to take this act as a true inter-
pretation of the intention of the Legislature, inasmuch as
attention had been called to the difficulty of giving a proper
construction to the law as it stood originally.

We cannot perceive that this last mentioned act changes
the effect of the section in any particular. The proviso had
already spent its whole force in excluding from apportion-
ment in the present year twenty-five per cent. of the revenue
of 1866. It is made to take effect from and after its passage.

There is nothing in its terms to show that it was intended to be retroactive in its operation, so as to embrace the State revenue for the year 1866. If this had been the intention of the Legislature, twenty-five per cent. of the revenue for that year ought to have been especially designated and set apart by the repealing statute.

It is a well settled rule for the construction of statutory law that every act of the Legislature must be held to be prospective in its operation, unless a different effect is clearly to be gathered from its terms—Sayre v Wisner, 8 Wend. 661; Hastings v. Lane, 3 Shep. 134; Brown v. Wilcox, 14 S. & M. 127; Quackenbush v. Dank, 1 Denio, 128.

In the matter of private rights, any other rule of construction would work great injustice, and it is conceived that its effect as to all questions affecting the interests of the public at large must be to produce great inconvenience and confusion. We think, therefore, that by our application of the rules which ordinarily govern in the construction of statutes, there can be no doubt as to the proper force and effect of the act as it now stands.

Whether the Public Schools of the State are to be injuriously affected by such a construction or not, is a question with which this court can have nothing to do, even if it could be shown affirmatively that the cause of public instruction would suffer greatly by withholding this portion of the School fund until the year 1868; still it does not present a consideration sufficient to change what we conceive to be a plain and just interpretation of the law.

This examination of the question involved in the application of the relator and the answer of respondent, covers the real point at issue, and we do not feel called upon to discuss any collateral points that may have been suggested.

The other judges concurring, the peremptory mandamus will be refused.